1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7   MICHAEL ANGELO POWELL,                  Case No.  14-cv-05308-JST

         Plaintiff,
8                                           **ORDER GRANTING SUMMARY
                                            JUDGMENT IN FAVOR OF
9       v.                                  DEFENDANTS, DENYING AS MOOT
                                            PLAINTIFF'S SECOND AMENDED
10  RICHARD L. MARLAIS, et al.,             PRELIMINARY INJUNCTION
                                            MOTION, DENYING PLAINTIFF'S
         Defendants.                        MOTION TO SUPPRESS FEBRUARY
11                                          22, 2016 DEPOSITION TRANSCRIPT**

12                                          Re: Dkt. Nos. 48, 51, 68, 69

13

14  **I.      INTRODUCTION**

15          Plaintiff filed this pro se civil rights action under 42 U.S.C. § 1983 against prison officials

16  at Correctional Training Facility – Soledad ("CTF"), where he is currently housed.  Plaintiff

17  alleges that defendants Dr. Marlais and Dr. Calderon failed to properly treat his abscessed tooth in

18  2012 and 2013 and that defendant Dr. Uy failed to order proper follow-up treatment since that

19  time.

20          Now before the Court are the following motions:  a second amended preliminary

21  injunction motion filed by Plaintiff (Docket No. 48); summary judgment motions filed by Drs.

22  Marlais and Uy (Docket No. 51) and by Dr. Calderon (Docket No. 68); and Plaintiff's motion to

23  suppress the February 22, 2016 deposition transcript (Docket No. 69).  For the reasons set forth

24  below the Court GRANTS the summary judgment motion filed by Drs. Marlais and Uy; GRANTS

25  the summary judgment motion filed by Dr. Calderon; DENIES Plaintiff's second amended

26  preliminary injunction motion; and DENIES Plaintiff's request to suppress the February 22, 2016

27  deposition transcript.

28

United States District Court
Northern District of California

## II.      BACKGROUND

The following facts are undisputed unless otherwise noted.

Prior to Plaintiff's incarceration, Plaintiff had a porcelain-fused bridge applied between lower anterior teeth 23 and 26 to replace two missing lower front teeth, teeth 24 and 25.  Docket No. 52 ("Marlais Decl.") ¶ 8.  The bridge was anchored to teeth 23 and 26 with crowns bonded to these teeth.  Docket No. 68-2 ("Calderon Decl.") ¶ 4.

In mid-January 2012, a CTF dentist conducted a dental examination of Plaintiff and prepared a dental treatment plan.  Docket No. 53 ("Uy Decl.") ¶ 6, and Ex D at 41–45.  The dental examination noted that Plaintiff had an asymptomatic abscess at tooth 23.  Uy Decl. ¶ 6 and Ex. D at 54.  The treatment plan listed the following necessary dental treatments:  gross debridement for all teeth, extraction of both teeth 23 and 4, an amalgam (filling) for tooth 2, and an occlusal amalgam (filling on the biting surface) for tooth 15.  Uy Decl., Ex. D at 6 and 43.  On January 12, 2012, Plaintiff refused the recommended extraction of tooth 23 by signing a Form 7362, Refusal of Examination and/or Treatment, wherein he acknowledged that he had been informed that the abscess detected at tooth 23 could cause pain and infection.  Uy Decl., Ex. D at 6.  Plaintiff refused the entire dental treatment plan on a Form 7362 dated January 20, 2012, and acknowledged that he had been informed that the failure to follow the treatment plan could result in future pain, swelling, and infection.  Uy Decl., Ex. D at 6 and 55.

On January 25, 2012, Plaintiff had a teeth cleaning and he agreed to have the recommended fillings done.  Uy Decl., Ex. D at 56.

On February 7, 2012, Plaintiff was seen in response to his complaint of a sore gum around tooth 26.  Uy Decl., Ex. D at 57.  X-rays showed that there was no abscess at tooth 26, but again showed an abscess at tooth 23.  Uy Decl., Ex. D at 57.

During March 2012, Plaintiff was seen by the CTF dental office four times, during which tooth 4 was extracted and fillings were done on tooth 2 and tooth 15.  Uy Decl., Ex. D at 17–18 and 58–61.  Plaintiff continued to refuse to allow the extraction of tooth 23.

On August 7, 2012, Plaintiff submitted an emergency request for dental treatment, stating: I'm in a great deal of 'pain' with my lower front 4 teeth.  The pain is waking me up at

2

night.  I need antibiotics.  Will you 'please' call me in as soon as possible.  Please!  Thank you!

Uy Decl., Ex. D at 88.

### A.   August 13, 2012 Dental Examination by Dr. Marlais

On August 13, 2012, Plaintiff was examined by Dr. Marlais in response to his healthcare request submitted August 7, 2012.  Marlais Decl., Ex. A at 63.  In the pain profile that Plaintiff completed at the dental examination, Plaintiff reported waking at night with pain in his lower jaw, especially at tooth 26.  Marlais Decl., Ex. A at 93.  He reported that cold water worsened the pain, but acetaminophen helped.  Marlais Decl., Ex. A at 93.

Dr. Marlais examined tooth 23 and noticed that a large portion of the biting edge of tooth 23 was missing and appeared to have been fractured prior to the placement of the bridge.  Marlais Decl. ¶ 8.  Dr. Marlais took an x-ray of tooth 23 which showed a chronic apical abscess and pulp necrosis (death of the material within a tooth).  Marlais Decl. ¶ 4.  Bacterial infection cannot be seen in x-rays.  Marlais Decl. ¶ 6.

Dr. Marlais concluded that the abscess at tooth 23 was sterile and not infected for the following reasons.  First, an acute abscess caused by bacterial infection is usually accompanied by pain, fever and swelling, but Plaintiff exhibited neither fever nor swelling.  Marlais Decl. ¶ 6.  Second, Plaintiff reported that cold water worsened the pain but it is generally heat that causes an abscess to hurt, because heat causes the pus in an abscess to expand and put hydraulic pressure on the bone.  Marlais Decl. ¶ 7.  A tooth with a dental abscess does not have vital tissue in the pulp and will not be sensitive to cold.  Marlais Decl. ¶ 5.  Third, generally hydraulic pressure causes the tooth to become sensitive to percussion but Plaintiff did not exhibit sensitivity to palpitation or percussion of tooth 23.  Marlais Decl. ¶¶ 6–7.  Dr. Marlais concluded that the pain reported by Plaintiff at tooth 26 was "referred pain" caused by night-time teeth grinding, and was not caused by pressure in, or infection of, the abscess at tooth 23.  Marlais Decl. ¶ 7 and Ex. A at 63.

Plaintiff disputes Dr. Marlais' assessment of the origin of his pain, of the existence of his pain, and of the severity of his pain.  Plaintiff alleges that his abscess was infected and had been causing him severe pain since August 7, 2012.  The pain included physical discomfort, debilitating headaches, and fatigue.  The pain interfered with his ability to sleep and to eat solid food.  The

United States District Court
Northern District of California

1   pain caused Plaintiff to suffer from isolation, depression, and emotional distress because he was

2   too fatigued and uncomfortable to leave his cell.  Docket No. 48 at 4.

3       The parties provide differing accounts of which treatment options were discussed with

4   Plaintiff at this appointment.

5       According to Plaintiff, Dr. Marlais told him the following.  Dr. Marlais stated that the only

6   treatment available at CTF for Plaintiff's abscess was extraction of tooth 23, which would also

7   require removal of the four-tooth bridge (spanning teeth 23–26) and extraction of tooth 26.

8   Docket No. 13 at 5 and Docket No. 48 at 3.  Dr. Marlais informed Plaintiff that there was a

9   surgery that could save his tooth, but none of the CTF dentists were capable of performing this

10  surgery, and this surgery could only be done by an outside surgeon "specialist" and could

11  therefore be expensive.  Docket No. 13 at 5.  Dr. Marlais told Plaintiff: "You have to remember

12  where you're at."  Id.  Dr. Marlais then informed Plaintiff that he would schedule Plaintiff for the

13  extraction of tooth 23 in a couple weeks.  Id.  Plaintiff questioned Dr. Marlais "about the dangers

14  of not treating the infection / abscess for a 'few more weeks' and asked if the abscess shouldn't be

15  cleared up first before he pulled his teeth."  Id.  Dr. Marlais told Plaintiff that it was not necessary

16  for the infection to clear up prior to the extraction.  Id.  Plaintiff refused the extraction and

17  informed Dr. Marlais that Plaintiff thought it was dangerous to pull the abscessed tooth while an

18  infection was festering, that the proposed treatment plan was not in Plaintiff's best long-term

19  medical interests, and that the proposed treatment plan was clearly based solely on monetary

20  incentives.  Id.

21      Dr. Marlais alleges that he informed Plaintiff that root canal treatment on tooth 23 was not

22  possible.  Marlais Decl. ¶ 13.  In a root canal, a dental surgeon would drill through a tooth canal to

23  the root of the tooth, remove the nerve and the pulp in the tooth, and clean and re-seal the

24  hollowed-out chambers of the tooth.  Calderon Decl. ¶ 4.  Dr. Marlais reports that the following

25  factors made a root canal treatment "not medically necessary."  The root canal of tooth 23 was

26  very difficult to see indicating that it had calcified closed and would be difficult to access, leading

27  to a negative outcome of any root canal treatment.  Marlais Decl. ¶ 13.  Root canal treatment

28  would fracture the abutment crown covering tooth 23, which would render tooth 23 unrestorable.

United States District Court
Northern District of California

4

Marlais Decl. ¶ 13.  Tooth 23 was dead and chronically abscessed, and therefore susceptible to infection.  Marlais Decl. ¶ 14.

Dr. Marlais states that he is unaware of any oral surgery available to Plaintiff in August 2012 that would have "saved" tooth 23, whether available at CTF or any outside facility.  Marlais Decl. ¶ 15.  Dr. Marlais informed Plaintiff that he recommended extraction of tooth 23, which would involve sectioning the bridge and replacing the anterior teeth with a partial lower denture.  Marlais Decl. ¶ 14 and Ex. A at 63.  In his declaration supporting his summary judgment motion, Dr. Marlais alleges that Plaintiff agreed to the recommended treatment plan.  Marlais Decl. ¶ 14.  Dr. Marlais' progress notes for this appointment are silent as to whether Plaintiff rejected or consented to the recommended treatment plan.  Marlais Decl., Ex. A at 63.

The parties agree that Plaintiff requested antibiotics and pain medications to treat the abscess and that Dr. Marlais refused the request.  However, the parties provide differing accounts as to why Dr. Marlais refused.

Plaintiff alleges that Dr. Marlais stated that his personal policy was to not prescribe antibiotics at this facility because inmates became tolerant to antibiotics if they were prescribed too often and unnecessarily.  Docket No. 13 at 4 and Docket No. 48 at 3.  In response, Plaintiff informed Dr. Marlais that he had never received antibiotics in the nine years that he had been in custody, and again requested antibiotics.  Docket No. 13 at 4 and Docket No. 48 at 3.  Dr. Marlais refused to check Plaintiff's medical records to verify Plaintiff's claim and continued to refuse to prescribe antibiotics.  Docket No. 13 at 4 and Docket No. 48 at 3.  Plaintiff also alleges that Dr. Marlais refused to prescribe pain medications "because all inmates are drug addicts and lie about dental pain."  Docket No. 13 at 4.  Plaintiff informed Dr. Marlais that he was not lying about his pain, and that the pain could be confirmed the x-rays showing an abscess and by the visible swelling of Plaintiff's lower jaw that had been caused by the abscess.  Docket No. 13 at 4–5.  Plaintiff

Dr. Marlais stated that he refused to provide antibiotics because the dental examination did not show signs of either an acute abscess or infection.  Marlais Decl. ¶ 11.  Dr. Marlais stated that while antibiotics can be an effective and appropriate treatment for bacterial infection, antibiotics

are contraindicated, have side effects, and breed antibiotic-resistant bacteria if prescribed indiscriminately.  Marlais Decl. ¶ 11.  Dr. Marlais further stated that if there had been an infection, he would have prescribed an antibiotic to treat it prior to performing other dental services because an infection makes it difficult to numb a patient which in turn makes the patient more difficult to treat.  Marlais Decl. ¶ 11.

Dr. Marlais does not recall Plaintiff requesting pain medication at the August 13, 2013 dental examination.  Marlais Decl. ¶ 10.  At that time, Plaintiff had an active prescription for 650 mg acetaminophen three times daily and was unable to take non-steroidal anti-inflammatories such as Motrin because he had been treated for hepatitis C.  Marlais Decl. ¶ 10 and Ex. B at 110–12.  Plaintiff's medical records also indicated a codeine allergy.  Marlais Decl. ¶ 10 and Ex. B at 110–12.  Dr. Marlais concluded that no additional prescription for pain medications was necessary.  Dr. Marlais also concluded that Plaintiff was not in pain, because Plaintiff did not report pain in response to palpitation or percussion of his abscessed tooth and because Plaintiff confirmed that he was not suffering sharp dental pain; that he had filled out a form exaggerating his pain to get a prescription for pain medication; and that he was seeking prescription pain medication in case the abscess became infected in the future and caused him pain in the future.  Marlais Decl. ¶¶ 9, 11.

The following day, Plaintiff submitted a healthcare grievance complaining about Dr. Marlais' recommended treatment plan, requesting that tooth 26 be "treated and not pulled," a prescription for a seven-to-ten day course of antibiotics to treat his abscess, and a prescription for pain medication stronger than acetaminophen.  Docket No. 54-2 at 4 and 6.

**B.      August 22, 2012 Dental Examination by Dr. Marlais**

On August 22, 2012, Plaintiff was called to the dental office where he was seen by Dr. Marlais.  Plaintiff alleges that he was informed that the appointment was for the extractions of tooth numbers 23 and 26.  Docket No. 48 at 4.  Plaintiff further alleges that he informed Dr. Marlais that he was still in a great deal of pain and requested both pain medication and antibiotics.  Docket No. 48 at 4.  Dr. Marlais alleges that the appointment was only for the extraction of tooth 23 and sectioning of the bridge, that Plaintiff did not report any pain at this appointment, and that Dr. Marlais did not observe any signs of infection at this appointment.  Marlais Decl. ¶ 16 and Ex.

6

A at 64.  The progress notes for this appointment and the related refusal of treatment executed by Plaintiff at this appointment only refer to the extraction of tooth 23.  Marlais Decl., Ex. A at 22 and 64.  The parties agree that Plaintiff refused to have tooth 23 extracted and that no dental services were performed that day.  Docket No. 48 at 4 and Marlais Decl. ¶ 16.

### C.      September 7, 2012 Dental Examination by Dr. Nares

On September 7, 2012, Plaintiff was interviewed by Dr. Nares in response to his resubmitted healthcare appeal.  Docket No. 48 at 4.  Plaintiff informed Dr. Nares that the abscess continued to cause him pain, and requested antibiotics to treat the abscess and pain medication to address his pain.  Docket No. 48 at 4.

Plaintiff informed Dr. Nares that he opposed extraction of tooth 23 for the following reasons.  First, extraction of tooth 23 and the related four tooth bridge would require the extraction of tooth 26, a healthy tooth, because tooth 26 could not stand on its own without the support of the bridge.  Docket No. 13 at 7.  Second, without the bridge, Plaintiff would have difficulty eating food because he would be missing four of his lower front teeth.  Finally, the removal of these lower teeth would destabilize Plaintiff's remaining lower teeth, resulting in the teeth becoming "crooked over time and unproductive."  Docket No. 13 at 7.  Plaintiff also informed Dr. Nares that he was aware of a surgery that could be done to treat his abscess and save both tooth 23 and the related bridge.  Docket No. 13 at 7.

Dr. Nares informed Plaintiff that this surgery could only be performed by an oral surgeon specialist because it required drilling the porcelain bridge.  Docket No. 13 at 7.  Dr. Nares examined Plaintiff and prescribed him antibiotics.  Docket No. 13 at 7 and Marlais Decl., Ex. A at 65.

Plaintiff started the course of antibiotics on September 9, 2012, and by September 12, 2012, Plaintiff's pain had subsided.  Docket No. 48 at 4.

### D.      Dental Treatment from October 2012 to August 2013

Between October 2012 and August 2013, Plaintiff received dental services unrelated to tooth 23 on October 4, 2012, December 4, 2012, December 6, 2012, December 11, 2012, and February 26, 2013.  Uy Decl. ¶ 7 and Ex D at 66–70.  During this time period, Plaintiff did not

United States District Court
Northern District of California

7

report any pain caused by tooth 23.  Uy Decl., Ex. D at 66–70; Marlais Decl. ¶¶ 17–18.  After December 6, 2012, Dr. Marlais had no further involvement in Plaintiff's dental treatment and had no further contact with Plaintiff.  Uy Decl., Ex. D at 66–70; Marlais Decl. ¶ 19.

E.      **Dental Treatment from September 2013 to April 2015**

1.      **September 5, 2013 Dental Examination by Dr. Calderon**

On September 5, 2013, Plaintiff was summoned to the CTF dental office for an examination by CTF dentist Dr. Calderon.  Plaintiff had not scheduled this dental appointment and alleges that the dental appointment was scheduled in response to a court order for an informal response issued in his state habeas petition challenging his dental treatment.  Docket No. 13 at 10.  During this visit, Dr. Calderon examined tooth 23 and the related bridge, and reviewed recent x-rays of Plaintiff's teeth.  Docket No. 13 at 10; Calderon Decl. ¶ 4.  Dr. Calderon concluded that Plaintiff had chronic apical periodontitis — long-tern breakdown or decay of the nerve tissue — in tooth 23 which rendered tooth 23 non-vital, abscessed, and susceptible to infection.  Calderon Decl. ¶ 4.  Dr. Calderon opined that there were two medically acceptable dental treatments for tooth 23, either an extraction or a root canal.  Calderon Decl. ¶ 4.

Dr. Calderon discussed the treatment options with Plaintiff, who expressed his desire to preserve tooth 23.  Calderon Decl. ¶ 4; Docket No. 13 at 10.  Dr. Calderon informed Plaintiff that it would be difficult to access the root canal because the x-rays indicated that the canal had shrunk and calcified.  Calderon Decl. ¶ 5.  Dr. Calderon stated that x-rays do not show whether a canal is so calcified that the root canal can no longer be accessed.  Calderon Decl. ¶ 5.  Dr. Calderon also informed Plaintiff that drilling through the porcelain crown on tooth 23 could fracture the bridge.  Calderon Decl. ¶ 5.  Dr. Calderon explained that the root canal could ultimately lead to more damage to tooth 23 that would render removal of tooth 23 imperative.  Calderon Decl. ¶ 5.  Plaintiff alleges, and Dr. Calderon does not dispute, that Dr. Calderon also informed Plaintiff that the root canal was "medically necessary to save the tooth" and that with the root canal, the prognosis for the tooth was very good.  Docket No. 13 at 10.

Plaintiff verbalized his understanding of the risks and difficulties of the root canal treatment and asked to proceed with the root canal treatment.  Calderon Decl. ¶ 5.  Dr. Calderon

United States District Court
Northern District of California

1   therefore scheduled Plaintiff for a root canal treatment for tooth 23.  Calderon Decl. ¶ 5.

2         **2.      September 11, 2013 Root Canal Treatment by Dr. Razavi**

3         On September 11, 2013, Dr. Razavi attempted to perform the root canal on tooth 23.  After

4   drilling on Plaintiff's abscessed tooth for approximately forty-five minutes, Dr. Razavi informed

5   Plaintiff that he could not complete the root canal because he could not find the tooth canal.

6   Docket No. 13 at 10.  Dr. Razavi put a temporary filling in the hole drilled into tooth 23 so that

7   another dentist could finish the root canal.  Docket No. 13 at 10.

8         Defendants allege that Dr. Razavi was unable to complete the root canal because the canal

9   was excessively calcified.  Calderon Decl. ¶ 6 and Ex. B.  Plaintiff alleges that Dr. Razavi

10   informed Plaintiff that he was unable to complete the root canal because there were limited

11   materials available at CTF.  Docket No. 13 at 10.  Specifically, Dr. Razavi stated that CTF lacked

12   a chemical that could be used to dissolve the build-up in the tooth canal.  Docket No. 13 at 10.  Dr.

13   Razavi also informed Plaintiff he had not taken "Root Canal Surgery" courses in dental school

14   although he was supposed to have done so, and that perhaps a more experienced dentist such as

15   Dr. Calderon could find the canal and finish the root canal.  Docket No. 13 at 10–11.

16         Plaintiff alleges, and Defendants do not dispute, that Dr. Razavi stated that he would

17   prescribe Plaintiff antibiotics and pain medication because Plaintiff was likely to experience pain

18   and discomfort following the attempted surgery.  Docket No. 13 at 11.  While Plaintiff received

19   antibiotics the following day, he did not receive any pain medication.  Docket No. 13 at 11.

20   Plaintiff alleges that because he did not receive pain medication, he suffered severe pain from the

21   partially drilled hole until the pain subsided on its own on September 13, 2013, two days after the

22   attempted root canal.

23         **3.      September 17, 2013 Root Canal Treatment by Dr. Razavi**

24         On September 17, 2013, Plaintiff was called to the dental office again and informed that

25   Dr. Calderon would attempt the root canal treatment.  The parties dispute the details of this

26   attempted root canal.

27         Dr. Calderon states that after drilling for approximately ten to fifteen minutes on tooth 23,

28   Dr. Calderon discovered that the canal was so excessively calcified and dense that he was only

United States District Court
Northern District of California

9

able to access the top one-fourth of the canal.  Calderon Decl. ¶ 7.  Dr. Calderon alleges that he informed Plaintiff that the canal was so excessively calcified that it would not be possible to complete the root canal treatment.  Calderon Decl. ¶ 7.

Plaintiff claims that Dr. Calderon drilled on the tooth for approximately thirty to forty minutes before determining that it was not possible to complete the root canal treatment.  Docket No. 13 at 11.  Plaintiff alleges that Dr. Calderon informed Plaintiff that he could not find the tooth canal and therefore could not complete the root canal.  Docket No. 13 at 11.

The parties agree that following this root canal, Dr. Calderon informed Plaintiff that he had changed his treatment recommendation from a root canal to extraction.  Docket No. 13 at 11 and Calderon Decl. ¶ 7.  Plaintiff refused to consent to extraction of tooth 23 and informed Dr. Calderon that he wished to have an oral surgeon specialist complete the surgery.  Docket No. 13 at 11.  Dr. Calderon concluded that referral to an outside medical facility was not medically necessary because, after attempting the root canal treatment, Dr. Calderon now agreed with Dr. Razavi's conclusion that tooth 23 could not be treated in a way that would preserve what was left of the tooth.  Calderon Decl. ¶ 8.

Plaintiff then requested prescription pain medication for the pain that he anticipated would be caused by the incomplete root canal.  Docket No. 13 at 11.  Dr. Calderon stated that he would not prescribe any pain medication for Plaintiff because the pharmacy stated that Plaintiff had an allergy to codeine.  Plaintiff responded that this was factually inaccurate and could be confirmed by reviewing Plaintiff's medical records which indicated that he had been prescribed codeine in August 2005 following a knee surgery.  Docket No. 13 at 11.  Dr. Calderon refused to prescribe any pain medication.  Docket No. 13 at 12.  Later that day, Plaintiff was seen by his medical doctor who reviewed Plaintiff's prescription information and called the pharmacy.  Docket No. 13 at 12.  According to the medical doctor, neither the prescription information nor Plaintiff's medical history indicated any allergy to codeine.  Docket No. 13 at 12.  Defendants do not dispute or otherwise address Plaintiff's allegations regarding this particular request for prescription pain medications.

United States District Court
Northern District of California

United States District Court
Northern District of California

### 4.     December 27, 2013 Dental Examination by Dr. Nguyen[1]

On December 27, 2013, Plaintiff was examined by CTF dentist Dr. Nguyen in response to a request for dental treatment marked urgent and submitted on December 22, 2013.  Docket No. 13 at 13.  Plaintiff informed Dr. Nguyen that his front lower jaw, around tooth 23, continued to cause him pain.  He requested pain medication for his pain and antibiotics to treat the abscess.  After examining Plaintiff, Dr. Nguyen prescribed him antibiotics and ibuprofen.  Plaintiff requested that Dr. Nguyen refer him to an oral surgeon specialist for treatment and preservation of tooth 23 and the related bridge.  Dr. Nguyen informed Plaintiff that, because of the ongoing litigation, she was prohibited him from referring Plaintiff an oral surgeon and from discussing other treatment options.  Docket No. 13 at 13.

### 5.     Dental Treatment from January 2014 through April 2015

After December 2013, Plaintiff did not request dental services again until June 2015, seven months after he filed the instant action and six weeks prior to filing the amended complaint.  Docket Nos. 53-4 at 79 and 53-5 at 2.  The dental treatment requested and received in June 2015 are not referenced in Plaintiff's amended complaint.

### F.     Dr. Uy's employment with the California Department of Corrections and Rehabilitation

Dr. Uy has been employed with the California Department of Corrections and Rehabilitation ("CDCR") since 2009.  In January 2014, Dr. Uy began working at CTF as the supervising dentist.  Docket No. 53 ("Uy Decl."), ¶ 1.  Prior to January 2014, Dr. Uy worked as staff dentist and supervising dentist at other CDCR locations.  Id.   As the CTF supervising dentist, Dr. Uy does not have a regular patient schedule, but treats inmate-patients on occasion when a staff dentist is unexpectedly absent.  Id.

### G.     Grievance and Litigation History

On August 14, 2012, Plaintiff submitted an emergency healthcare grievance, CTF-HC-12037770, stating that the abscess continued to cause him significant pain that prevented him from

---

[1] Plaintiff misspells Dr. Nguyen's name as Nugyne in his pleadings.  Docket No. 13 at 13. Plaintiff's dental records indicate that he is referring to Dr. Chi Nguyen.  Docket No. 53-5 at 16.

11

United States District Court
Northern District of California

sleeping.  Docket Nos. 13 at 5 and 54-2 at 4–7.  Plaintiff requested that his tooth be treated not pulled, and also requested antibiotics and pain medication "stronger than acetaminophen."  Docket Nos. 13 at 5 and 54-2 at 6.

On September 12, 2012, Plaintiff received a first-level response to his grievance which granted in part his grievance, in that Plaintiff received antibiotics, and denied in part his grievance, in that Plaintiff's requests for referral to an oral surgeon and for his tooth to be treated were denied.  Docket Nos. 13 at 5 and 54-2 at 6, 9–10.  Plaintiff unsuccessfully appealed his healthcare grievance through the prison grievance system.  Docket No. 54-2 at 2–11.  Plaintiff's healthcare grievance was denied at the third and final level on April 23, 2013.  Docket No. 54-2 at 2–3.

On December 3, 2014, Plaintiff filed the instant action and named Drs. Calderon and Marlais as defendants.  Docket No. 1.  On April 29, 2015, Plaintiff filed an amended complaint and named Dr. Uy as an additional defendant.  Docket No. 13.  Plaintiff identified Dr. Uy as "Dr. Calderon's 'successor' per Federal Rules of Civil Procedure, Rule 25(d)(1)."  Docket No. 13 at 2.

## III.    DISCUSSION

### A.    Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a) (2014).  Material facts are those that may affect the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See id.

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).  The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  Id.  The burden then shifts to the nonmoving party to "go beyond the pleadings

1   and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on

2   file, 'designate 'specific facts showing that there is a genuine issue for trial.'"  See id. at 324

3   (citing Fed. R. Civ. P. 56(e)).

4        For purposes of summary judgment, the court must view the evidence in the light most

5   favorable to the nonmoving party; if the evidence produced by the moving party conflicts with

6   evidence produced by the nonmoving party, the court must assume the truth of the evidence

7   submitted by the nonmoving party.  See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir.

8   1999).  The court's function on a summary judgment motion is not to make credibility

9   determinations or weigh conflicting evidence with respect to a disputed material fact.  See T.W.

10  Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

11       **B.      Deliberate Indifference to Serious Medical Needs**

12       Deliberate indifference to a serious medical need violates the Eighth Amendment's

13  proscription against cruel and unusual punishment.  See Estelle v. Gamble, 429 U.S. 97, 104

14  (1976); McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992) overruled on other grounds by

15  WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997).  A determination of

16  "deliberate indifference" involves an examination of two elements:  the seriousness of the

17  prisoner's medical need and the nature of the defendant's response to that need.  See McGuckin,

18  974 F.2d at 1059.

19       A prison official is deliberately indifferent if he knows that a prisoner faces a substantial

20  risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.  Farmer

21  v. Brennan, 511 U.S. 825, 837 (1994).  The prison official must not only "be aware of facts from

22  which the inference could be drawn that a substantial risk of serious harm exists," but he "must

23  also draw the inference."  Id.  If a prison official should have been aware of the risk but was not,

24  then the official has not violated the Eighth Amendment, no matter how severe the risk.  Gibson v.

25  County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002).  Mere negligence, or even gross

26  negligence, is not enough.  Farmer, 511 U.S. at 835–36 & n.4.

27       **C.      Dr. Uy**

28       Dr. Uy contends that he is entitled to summary judgment because Plaintiff failed to exhaust

United States District Court
Northern District of California

his administrative remedies against Dr. Uy, and because Dr. Uy was not involved in, and did not supervise, Plaintiff's dental treatment during the relevant time period.

### 1. Exhaustion of Administrative Remedies

#### a. Standard

"No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. Porter v. Nussle, 534 U.S. 516, 524 (2002). All available remedies must be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Id. Section 1997e(a) requires "proper exhaustion" of available administrative remedies. Woodford v. Ngo, 548 U.S. 81, 93 (2006). Proper exhaustion requires using all steps of an administrative process and complying with "deadlines and other critical procedural rules." Id. at 90. The level of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures. Jones v. Bock, 549 U.S. 199, 218 (2007); see also Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) ("To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations.").

The CDCR provides its inmates and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). In order to exhaust available administrative remedies within this system, a prisoner must submit his complaint on CDCR Form 602 and proceed through several levels of appeal: (1) first formal-level appeal filed with one of the institution's appeal coordinators, (2) second formal-level appeal filed with the institution head or designee, and (3) third formal-level appeal filed with the CDCR director or designee. Cal. Code Regs. tit. 15, § 3084.7. This satisfies the administrative remedies exhaustion requirement under § 1997e(a). Id. §§ 3084.1(b); 3084.7(c)(3); Barry v. Ratelle, 985 F. Supp. 1235, 1237–38 (S.D. Cal. 1997). If an inmate's grievance does not comply with a procedural rule but prison officials decide

United States District Court
Northern District of California

14

1   it on the merits anyway at all available levels of administrative review, it is exhausted.  Reyes v.

2   Smith, 810 F.3d 654, 656, 658 (9th Cir. 2016) (agreeing with all "sister" circuits in so holding).

### b.      Analysis

4        Dr. Uy argues that Plaintiff's grievance number CTF-HC-12037770, filed on August 14,

5   2012, failed to exhaust Plaintiff's claim that Dr. Uy was deliberately indifferent to his serious

6   medical needs because the grievance only grieved Dr. Marlais' conduct at the August 13, 2012

7   appointment – specifically, Dr. Marlais' failure to prescribe antibiotics and adequate pain

8   medication, Dr. Marlais' recommendation that tooth 26 be extracted, and Dr. Marlais refusal to

9   refer Plaintiff to an outside surgeon for treatment of his tooth root – and did not grieve Dr. Uy's

10  involvement in Plaintiff's dental care or grieve the dental treatment of tooth 23.

11       Plaintiff contends that the reference to tooth 26 in his grievance was a typographical error

12  and that Dr. Nares and other CDCR officials understood that he was grieving the treatment of

13  tooth 23.  Docket No. 63 at 3.  He also argues that this grievance concerned proper dental

14  treatment for his painful abscess, which was an ongoing issue, and not solely Dr. Marlais' actions

15  on August 13, 2012.  Id. at 6.  Plaintiff further argues that because dental treatment of his abscess

16  was an ongoing issue, prison regulations precluded him from filing a separate grievance

17  challenging other dentists' treatment of this issue.  Id. (citing 15 Cal. Code Regs. § 3084.6(c((4)).

18       Having carefully reviewed the grievance, the Court finds that Plaintiff has exhausted his

19  administrative remedies for the claims raised in his instant action.

20       First, the failure to identify Dr. Uy in the grievance, as required by the California Code of

21  Regulations, title 15, section 3084.2(a)(3)-(4), was waived by Defendants when Defendants

22  addressed the grievance on the merits.  Reyes, 810 F.3d at 656, 658.  In the responses to the

23  grievance, the CDCR addressed whether Plaintiff was entitled to a referral to an outside specialist

24  for treatment of the root of tooth 23.  See Docket No. 54-2 at 2-3 and 10; see also discussion infra.

25       Second, Dr. Uy reads Plaintiff's grievance too narrowly.  Plaintiff accurately characterizes

26  his grievance as seeking proper dental treatment for tooth 23, rather than complaining solely about

27  Dr. Marlais' treatment during August 2013.  While Plaintiff's grievance complains about Dr.

28  Marlais' refusal to treat and save tooth 23, and refusal to provide antibiotics and pain medication,

United States District Court
Northern District of California

15

the relief sought is independent of Dr. Marlais and requests that tooth 23 "be treated and not pulled, that [Plaintiff] receive a 7 to 10 day prescription for antibiotics for the abscess and that [Plaintiff] receive something stronger than acetaminophin (sic) for the pain."  Docket No. 54-2 at 6.

Finally, Plaintiff's grievance complied with the specificity requirements set forth in the prison regulations.  The CDCR grievance procedure only requires that the prison "state all facts known and available to him/her regarding the issue being appealed at the time of submitting the [grievance]."  Cal. Code Regs. tit. 15, § 3084.2(a)(4).  Plaintiff was not required to specify concerns that he would have regarding future refusals to treat tooth 23 with a root treatment, antibiotics, and pain medication.[2]  Jones, 549 U.S. at 218.  Not only did Plaintiff's grievance comply with the CDCR's specificity requirements, but a review of the CDCR's response to Plaintiff's grievance indicates that prison officials also understood that the grievance was generally grieving the proposed treatment for tooth 23, rather than solely and specifically grieving Dr. Marlais' treatment in August 2013.  In both the first and second level response to the grievance, the responses identified the grievance's issues and requested action as follows:

|  | Issue Type | Action Requested |
|---|---|---|
| Issue 1: | Dental Services (Examination) | Tooth Root be treated |
| Issue 2: | Medication (Med Specific Type / Dose) | Antibiotic |

Docket No. 54-2 at 9.  In the director's level response, the response acknowledged that the institution decision correctly focused on the recommended extraction of tooth 23.  Docket No. 54-2 at 2.  The first-level response granted in part and denied in part the grievance as follows:

Your request to receive antibiotics was GRANTED.  The recommendation of the dentist is extraction of tooth #23.  You refused the extraction on January 20 and

---

[2] Moreover, as Plaintiff points out, CDCR grievance procedures prohibited him from filing additional grievances regarding prison's refusal to consider treatment options outside of extraction for tooth 23.  See Cal. Code Regs. tit. 15 § 3084.6(c)(2), (4) (grievance may be cancelled if the grievance "duplicates an inmate's . . . previous [grievance] upon which a decision has been rendered or is pending"; "If the issue is ongoing . . . the inmate . . . may appeal any time during the duration of the event; however, the inmate . . . is precluded from filing another appeal on the same issue unless a change in circumstances creates a new issue.").

United States District Court
Northern District of California

August 22, 2012 (copies attached).  There was no indication by your dentist to refer you to the oral surgeon and your request for the tooth root to be treated is DENIED.

Id. at 10 (emphasis in original).  Similarly, the third level response to the grievance concluded:

Though you may not have received the [dental] treatment of your choice, [i.e. the treatment of the root of tooth 23,] there is no indication you were denied necessary dental services in an attempt to reduce costs.]
. . .

After review, there is no compelling evidence that warrants intervention at the [Director's Level Review] as your dental condition has been evaluated and you are receiving treatment deemed medically necessary.

Docket No. 54-2 at 3.

After reviewing the evidence in the record, the Court finds that Plaintiff's grievance CTF-HC-12037770 exhausted his administrative remedies for the claims asserted in the instant action.  See Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) ("A grievance also need not contain every fact necessary to prove each element of an eventual legal claim.  The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay the groundwork for litigation.").

### 2.     Eighth Amendment Claim

Dr. Uy alleges that he was not deliberately indifferent to Plaintiff's serious medical needs because he was not the supervising dentist during 2012 through 2013, when the alleged indifference took place.  Docket No. 51 at 13.  Plaintiff contends that there is a "'De Facto'/underground" policy at CTF prohibiting treating oral abscesses with oral surgery, regardless of an inmate's serious medical needs, and that Dr. Uy has applied this policy to Plaintiff despite Plaintiff's serious medical needs.  Docket No. 63 at 7.   Plaintiff also alleges that because he is seeking injunctive relief, Dr. Uy is properly named as a defendant, pursuant to Pouncil v. Tilton, 704 F.3d 568, 576 (9th Cir. 2012).  Id.  Dr. Uy argues that Pouncil only apples to actions seeking injunctive relief related to unconstitutional laws or policies.  Docket No. 65 at 4.

### a.     Dr. Uy's alleged involvement

It is undisputed that Plaintiff filed his amended complaint on April 29, 2015, and that the amended complaint alleges that Drs. Marlais and Calderon violated Plaintiff's Eighth Amendment rights in 2012 and 2013.  See Docket No. 13.  It is also undisputed that Dr. Uy did not start

1     working at CTF until January 2014, after the constitutional violations alleged in the amended

2     complaint.  It is further undisputed that Plaintiff did not seek dental treatment between January

3     2014 and June 2015.

4          Assuming arguendo that there is a de facto policy of denying oral surgery treatment for

5     oral abscesses and that Dr. Uy applied such a policy to Plaintiff, any such action or inaction by Dr.

6     Uy took place in 2015, which is outside the scope of the complaint.[3]  There is therefore no genuine

7     dispute as to whether Dr. Uy is liable under section 1983 for his direct participation in, or

8     supervisory liability for, the alleged constitutional violations.  See Taylor v. List, 880 F.3d 1040,

9     1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal

10    participation by the defendant.  A supervisor is only liable for constitutional violations of his

11    subordinates if the supervisor participated in or directed the violations, or knew of the violations

12    and failed to act to prevent them.") (internal citations omitted).

13         However, these after-occurring claims would be properly brought in a supplemental

14    complaint.  A supplemental complaint adds to the complaint allegations of events occurring after

15    the original complaint was filed.  Fed. R. Civ. P. 15(d).  Under Rule 15(d), the Court may, "on just

16    terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or

17    event that happened after the date of the pleading to be supplemented."  Id.  A party may only file

18    a supplemental complaint with leave of court.  Id.  When considering whether to allow a

19    supplemental complaint, the Court considers factors such as whether allowing supplementation

20    would serve the interests of judicial economy; whether there is evidence of delay, bad faith or

21    dilatory motive on the part of the movant; whether amendment would impose undue prejudice

22    upon the opposing party; and whether amendment would be futile.  See San Luis & Delta–

23    Mendota Water Authority v. United States Dep't of the Interior, 236 F.R.D. 491, 497 (E.D. Cal.

United States District Court
Northern District of California

_____

[3] In his opposition to Dr. Calderon's summary judgment motion, Plaintiff alleges that Dr. Uy directly violated his Eighth Amendment rights when, in 2015, he interfered with treatment of Plaintiff's jawbone fracture by scheduling Plaintiff for a tooth extraction instead of for a treatment, of the fracture, Docket No. 73 at 9–10, and when in March 2016, Dr. Uy denied Dr. Razavi's recommendation that Plaintiff be treated by an outside oral surgeon, id. at 8.  As discussed supra, while these after-occurring claims may be properly brought in a supplemental complaint, the Court DENIES leave to file a supplemental complaint in this case because amendment would be futile.

1   2006).  As set forth later in this order, the Court finds that Plaintiff's Eighth Amendment rights

2   were not violated by the failure to treat the root of tooth 23, which is the crux of Plaintiff's after-

3   occurring claims, so supplementation would be futile.  Accordingly, the Court denies Plaintiff

4   leave to file a supplemental complaint.

5           Drawing all reasonable inferences in favor of Plaintiff, the Court finds that, to the extent

6   that Plaintiff's complaint seeks to hold Dr. Uy liable under section 1983 for Dr. Uy's personal

7   participation in, or supervisory liability for, the alleged constitutional violations, Dr. Uy is entitled

8   to summary judgment.

9                           **b.      Properly named defendant**

10          The Court agrees that Plaintiff has correctly named Dr. Uy as a defendant in this action

11  because he seeks affirmative injunctive relief that Dr. Uy can execute.  The Ninth Circuit has

12  recognized that the proper state defendant in a § 1983 action seeking prospective injunctive relief

13  is the one who "would be responsible for ensuring that injunctive relief was carried out, even if he

14  was not personally involved in the decision giving rise to [the plaintiff's] claims."  Pouncil, 704

15  F.3d at 576 (citing Gonzalez v. Feinerman, 663 F.3d 311, 315 (7th Cir. 2011) (the prison warden

16  was the proper defendant for a claim of injunctive relief, notwithstanding his lack of personal

17  involvement in the challenged conduct, because he would be responsible for ensuring that the

18  injunctive relief was carried out)); see also Hartmann v. Cal. Dep't of Corr. & Rehab., 707 F.3d

19  1114, 1127 (9th Cir. 2013) (holding that official who was "the 'most appropriate' defendant to

20  execute court-ordered injunctive relief" and the official who "would have the authority to ensure

21  execution of any order issued" were "proper official-capacity defendants for Plaintiffs'

22  Establishment Clause claim") (internal citations omitted).  Although both Pouncil and Hartmann

23  involved motions to dismiss, Pouncil, 704 F.3d at 570; Hartmann, 707 F.3d at 1120–21, the legal

24  principles articulated in those cases are still applicable at summary judgment.  Dr. Uy does not

25  dispute that he would be responsible for carrying out the requested injunctive relief.  Instead, he

26  argues that Pouncil and Hartmann should be narrowly read to apply only to claims of injunctive

27  relief challenging a law or policy.  Docket No. 65.

28          The Court finds that Dr. Uy's reading of Pouncil and Hartmann is unfounded.  In Pouncil,

United States District Court
Northern District of California

United States District Court
Northern District of California

the Ninth Circuit held that in seeking relief from a prison regulation, Pouncil had properly named the CDCR Director as a defendant "*because* [the CDCR director] would be responsible for ensuring that injunctive relief was carried out, even if he was not personally involved in the decision giving rise to Pouncil's claims." Id. at 576 (emphasis added). In other words, the reason the CDCR director was properly named as a defendant was because he would ensure the execution of the injunctive relief, and not because the injunctive relief involved a prison regulation.

In Hartmann, the Ninth Circuit held that two prison officials were properly named as official–capacity defendants in prisoners' § 1983 claim for violation of First Amendment's Establishment Clause, where prisoners sought affirmative injunctive relief requiring the prison administration to adopt and apply neutral criteria in determining chaplain hiring needs, and the officials named were the most appropriate defendants to execute any court-ordered injunctive relief. Hartmann, 707 F.3d at 1127. The Ninth Circuit analysis in Hartmann also focused on whether the official-capacity defendants were capable of executing the injunctive relief, and not on whether the injunctive relief involved a prison regulation. Id.

The Court therefore denies Dr. Uy's motion for summary judgment to the extent that Dr. Uy argues that he has been improperly named as a defendant. However, as discussed infra in section F, the Court finds that Plaintiff is not entitled to affirmative injunctive relief. Summary judgment is therefore granted in favor of Dr. Uy.

### D. Dr. Marlais

Dr. Marlais alleges that he was not deliberately indifferent to Plaintiff's serious medical needs because there was no bacterial infection in tooth 23 in August 2012, and because Plaintiff's requested dental treatment (pain medication, root treatment for tooth 23, and antibiotics) merely constitute a difference of opinion. Docket No. 51 at 16–17. In response, Plaintiff alleges that Dr. Marlais' refusal to prescribe antibiotics has been established as medically unreasonable by other prison dental professionals; that over-the-counter acetaminophen would not be the pain medication prescribe to Plaintiff if he were not incarcerated; and Dr. Marlais provided no medical treatment on August 13, 2012, for Plaintiff's festering abscess, knowingly causing Plaintiff to suffer severe pain for a prolonged time period. Docket No. 63 at 8.

United States District Court
Northern District of California

1    Viewing the evidence in the light most favorable to Plaintiff, the Court concludes that, at

2    best, Plaintiff's claim against Dr. Marlais amounts to either a difference of opinion as to his

3    medical treatment or a negligence claim, neither of which rise to the level of a constitutional

4    violation.  "A difference of opinion between a physician and the prisoner – or between medical

5    professionals – concerning what medical care is appropriate does not amount to deliberate

6    indifference." Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012), overruled in part on other

7    grounds, Peralta v. Dillard, 744 F.3d 1076, 1082–83 (9th Cir. 2014).  Rather, "[t]o show deliberate

8    indifference, the plaintiff 'must show that the course of treatment the doctors chose was medically

9    unacceptable under the circumstances' and that the defendants 'chose this course in conscious

10   disregard of an excessive risk to plaintiff's health.'" Id. at 988 (quoting Jackson v. McIntosh, 90

11   F.3d 330, 332 (9th Cir. 1996)).  A claim of medical malpractice or negligence insufficient to make

12   out an Eighth Amendment violation. Toguchi v. Chung, 391 F.3d 1051, 1060–61 (9th Cir. 2004).

13   In the instant case, there is no evidence that Plaintiff's medical needs were treated with

14   deliberate indifference by Dr. Marlais.  The record indicates that although Plaintiff did not receive

15   his requested dental treatment – root canal treatment of tooth 23, antibiotics, and prescription pain

16   medication – at the August 13, 2012 dental appointment, Dr. Marlais was responsive to Plaintiff's

17   complaint of pain caused by the abscess at tooth 23 and proposed a treatment plan which Plaintiff

18   found unacceptable.  At the August 13, 2012 appointment, Dr. Marlais examined Plaintiff's teeth,

19   took an x-ray, and interviewed Plaintiff regarding his pain and his teeth's reaction to cold and hot

20   water.  Marlais Decl. ¶¶ 4–6.  Dr. Marlais proposed the following dental treatment: extracting

21   tooth 23, sectioning the bridge, and replacing the anterior teeth with a partial lower denture.

22   Marlais Decl., Ex. A at 63.  Plaintiff refused the treatment and stated that he wished to treat tooth

23   23 with a course of antibiotics and oral surgery to treat the root of tooth 23, and requested pain

24   medication stronger than acetaminophen.  Docket No. 13 at 5.  Dr. Marlais refused to prescribe the

25   antibiotics, either because he believed them to be medically unnecessary or because he had a

26   policy against prescribing antibiotics to inmates because he believed that they would become

27   tolerant to the antibiotics.  Dr. Marlais claims that he does not recall any request for pain

28   medication while Plaintiff alleges that Dr. Marlais refused to prescribe pain medication because he

21

1    believed that all inmates are drug addicts and lie about their pain.

2            Evidence in the record supports Dr. Marlais' allegation that the extraction of tooth 23 is a

3    medically acceptable course of treatment.  Extraction of tooth 23 had been recommended as

4    medically necessary earlier that year, in January 2012, by CTF dentist Dr. Nguyen, who is not a

5    named defendant.  Uy Decl., Ex. D at 41–45.  When Dr. Nguyen examined Plaintiff again in

6    December 2013, she reiterated her recommendation that tooth 23 be extracted.  Extraction of tooth

7    23 has also been recommended again by another CTF dentist, Dr. Nares.  Uy Decl. ¶ 12.

8            Although Plaintiff alleges that the extraction of tooth 23 is medically unacceptable, he

9    points to no evidence in the record that supports this allegation.  Plaintiff's allegation that there are

10   other surgeries available that will save tooth 23, <u>see</u> Docket No. 66,[4] does not establish that the

11   extraction of tooth 23 is a medically unacceptable course of treatment.  In determining whether Dr.

12   Marlais provided unconstitutional medical care when he proposed extracting tooth 23 and refused

13   to authorize root canal treatment, the dispositive question is whether the proposed treatment was

14   medically unacceptable, and not whether there were alternative acceptable medical treatments

15   available.  <u>See</u>, <u>e.g.</u>, <u>Dixon v. Bannister</u>, 845 F. Supp. 2d 1136, 1144 (D. Nev. 2012) (because

16   extraction of four teeth and placing a partial denture not medically unacceptable under the

17   circumstances, prison dentist-defendants had not violated prisoner's Eighth Amendment rights

18   even though outside dentist had agreed to provide an alternative treatment – replacement of

19   _____

20   [4] Plaintiff requests the Court take judicial notice of documents describing an apicectomy, a root
     end resectioning, which he alleges is the surgery he needs for tooth 23.  Docket No. 66 at 2.  He
21   alleges that an apicectomy is a "common / standard **MINOR** surgical procedure with a very high
     success rate, that can be performed by a trained Endodontist."  <u>Id.</u>  Federal Rule of Evidence
22   201(b) provides that a "court may judicially notice a[n adjudicative] fact that is not subject to
     reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction;
23   or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably
     be questioned."  Fed. R. Evid. 201(a)-(b).  Although the Court "may take judicial notice of the
24   existence of unrelated court documents . . . it will not take judicial notice of such documents for
     the truth of the matter asserted therein."  <u>In re Bare Escentuals, Inc. Sec. Lit.</u>, 745 F. Supp. 2d
25   1052, 1067 (N.D. Cal. 2010) (in considering defendant's motion to dismiss, the court took judicial
     notice of the existence of unrelated court documents, but declined to take judicial notice of truth of
26   the matters set forth in these unrelated court documents).  In asking the Court to take judicial
     notice of the documents attached to Docket No. 66, Plaintiff is, in essence, requesting that it take
27   judicial notice of these documents for the truth of the matters asserted therein.  Accordingly, the
     Court DENIES the request for judicial notice.  After all, whether an apicectomy is the surgery
28   needed or is the sole medically acceptable treatment is not only subject to reasonable dispute – it is
     *the* disputed issue in this case.

crowns and veneers – free of charge); <u>Wood v. Idaho Dep't of Corr.</u>, 391 F. Supp. 2d 852, 863 (D. Idaho 2005) (prisoner's allegation that his eye condition required prescription sunglasses and tinted lenses on his regular glasses amounted only to a difference of opinion as to treatment provided where treating physician gave prisoner a different type of eye drops and referred him to an ophthalmologist).

Nor is it dispositive that in September 2013, Drs. Calderon and Razavi agreed to the root canal treatment which Dr. Marlais declined to prescribe.  Differing opinions between medical professionals as to appropriate medical treatment does not constitute a constitutional violation. <u>See</u> <u>Sanchez v. Vild</u>, 891 F.2d 240, 242 (9th Cir. 1989) (prisoner alleged a mere difference in medical opinion where prison doctor advised surgery and subsequent medical personnel treated him but did not recommend surgery).  Moreover, Dr. Calderon specified that there were two medically acceptable treatments, and that one of them was extraction.  Calderon Decl.¶ 4.

Similarly, Plaintiff's claim that he should have received prescription pain medication is the type of difference in medical opinion between a lay prisoner and medical personnel that is insufficient to establish a constitutional violation.  <u>See</u> <u>Alford v. Gyaami</u>, No. 2:13-CV-2143 DAD P, 2015 WL 3488301, at *10 n.3 (E.D. Cal. June 2, 2015) (noting that "in other contexts, courts within this circuit have consistently rejected a prisoner's attempt to dictate the terms of their pain medication") (citing cases).

Plaintiff has also failed to designate facts that show there is a genuine dispute as to whether Dr. Marlais' refusal to prescribe antibiotics to treat the infection in Plaintiff's abscess violated Plaintiff's Eighth Amendment rights.  Plaintiff claims that his abscess was infected because he was suffering pain from that area and because his jaw was swollen.  Dr. Marlais found no evidence of infection and diagnosed Plaintiff as having referred pain from nighttime tooth grinding, and concluded that antibiotics were not necessary to treat pain from tooth grinding. Marlais Decl. ¶ 7 and Ex. A at 63.  Plaintiff counters that because Dr. Nares prescribed antibiotics a month later, Dr. Marlais' refusal to provide antibiotics was medically unacceptable.  Assuming arguendo that Plaintiff had an infection at the abscess at tooth 23, Dr. Marlais' misdiagnosis was, at worst, negligence, which does not state a constitutional violation.  <u>See</u> <u>McGuckin</u>, 974 F.2d at

United States District Court
Northern District of California

1059 (mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights).  The fact that Dr. Nares prescribed Plaintiff the antibiotics which Dr. Marlais denied only shows a difference of opinion between medical professionals as to appropriate medical treatment.  Plaintiff has failed to show a genuine dispute as to whether Dr. Marais' refusal to provide antibiotics constituted an Eighth Amendment violation.  See Sanchez, 891 F.2d at 242.

Based on the record before this Court, the Court finds that Dr. Marlais established a course of treatment that was medically acceptable.  Accordingly, the Court concludes that Dr. Marlais is entitled to summary judgment in his favor.

**E.     Dr. Calderon**

Dr. Calderon alleges that he was not deliberately indifferent to Plaintiff's serious medical needs because he provided Plaintiff with medically acceptable treatment, and that Plaintiff's claim is simply a difference of opinion as to the appropriate dental treatment.  Docket No. 68-1 at 7–9.

Plaintiff alleges that Dr. Calderon's medical treatment was medically unacceptable because he allowed Dr. Marlais, who was under his supervision, to deny Plaintiff antibiotics and pain medication for his abscess, and allowed Dr. Marlais to provide "'NO' actual dental treatment" on August 13, 2012.  Docket No. 73 at 12 (emphasis in original).  As the Court has already found that Dr. Marlais established a medically acceptable course of treatment, the Court finds that Dr. Calderon's supervision of Dr. Marlais did not violated Plaintiff's Eighth Amendment rights.

Plaintiff also alleges that Dr. Calderon's medical treatment was medically unacceptable because Dr. Calderon acknowledged that the root canal was medically necessary and knew that CDCR dentists were not qualified to perform this root canal, but failed to refer Plaintiff to a dentist capable of executing the surgery — either a root canal specialist or an endodontist — thereby violating CDCR regulations and Plaintiff's Eighth Amendment rights.  Id. at 5–6.  In support of his allegation that a root canal specialist or endodontist can complete this root canal, Plaintiff alleges that on March 15, 2016, Dr. Razavi, his current dentist, submitted a recommendation for an outside oral surgeon to treat Plaintiff's abscess.  Id. at 8.  However, as discussed supra, a difference of opinion between Dr. Razavi and Dr. Calderon as to whether a root

United States District Court
Northern District of California

1    canal specialist or endodontist can complete the root canal does not, by itself, establish that Dr.

2    Calderon chose a medically unacceptable course of treatment in recommending that tooth 23 be

3    extracted, especially where other CDCR dentists have recommended the extraction of tooth 23.

4    See Sanchez, 891 F.2d at 242.  Also, there is no liability under § 1983 for violating prison policies.

5    Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009).  Finally, contrary to Plaintiff's

6    allegations, neither the CDCR regulations nor Dr. Razavi's March 15, 2016 dental progress notes

7    support his allegations.  The CDCR regulations distinguish between oral surgery and root canal

8    treatment, also known as endodontics. Uy Decl. ¶ 9.  The CDCR regulations governing

9    endodontics are set forth in Chapter 2.9 of the CDCR's Dental Services Policies & Procedures

10   Manual ("P&P Manual") (available at http://www.cdcr.ca.gov/DHCS/docs/2010-August-PP.pdf).

11   The P&P Manual does not require referral to an outside surgeon for medically necessary

12   procedures, as Plaintiff alleges.  See P&P Manual, Chapter 2.9.  The P&P Manual also indicates

13   that, subject to the criteria set forth in Chapter 2.9(E)(IV), endodontics are generally within the

14   scope of practice of CDCR's staff dentists.  Id., see also Uy Decl. ¶ 9.  The failure to refer Plaintiff

15   to an endodontist did not violate CDCR regulations.  Dr. Razavi's dental progress notes indicate

16   that he did not independently recommend that Plaintiff receive treatment from an endodontist.

17   Rather, he followed Plaintiff's wishes in sending Plaintiff's case to the Dental Authorization

18   Review ("DAR") Committee.  The dental progress notes indicate that Plaintiff informed Dr.

19   Razazi that he wanted an outside endodontist to do a root canal and apicoectomy, and sought a

20   DAR to obtain the necessary referral.  Docket No. 73 at 17 ("Patient wants to be sent to DAR to

21   see if he could go to outside endodontist for root canal and/or apicoectomy").  Dr. Razavi's notes

22   that that Dr. Razavi

> [i]nformed [Plaintiff] of poor prognosis of tooth [23] due to severely calcified
> canal; informed [Plaintiff] that this is beyond the reach of a general dentist;
> viability of tooth [23] would be decided at DAR.
>
> . . . Informed [Plaintiff] of findings and poor prognosis of this tooth [23];
> calcification makes navigating and obturating canal difficult, and this is beyond the
> reach of many general dentists; informad [Plaintiff] that leaving the abcess in place
> is risking future swelling and pain; informed [Plaintiff] about CDCR Policy and
> Procedure regarding endo and referral out for certain procedures

28   Id.  Dr. Razavi's dental notes confirm Dr. Calderon's diagnosis that the root canal was difficult to

perform because of the calcification in the canal, and, contrary to Plaintiff's assertion, do not

recommend any particular treatment.

Finally, Plaintiff alleges that there is evidence that Dr. Calderon deliberately disregarded

the risk to Plaintiff's health. Plaintiff alleges that Dr. Calderon was aware that a root canal of this

complexity could only be completed by an endodontist, but Dr. Calderon decided to "go the cheap

way" and have a CDCR dentist attempt the root canal. Plaintiff alleges that

> [i]n the community at large a general dentist would not have attempted a difficult root
> canal like plaintiff's, they would have the good sense to send their patient to a trained
> specialist an Endodontist, so they would receive the most efficient treatment for their
> medical problem.

Docket No. 73 at 7. Plaintiff alleges that Drs. Calderon and Razavi were unable to complete the

root canal, not because the canal was excessively calcified, but because only an endodontist or

root canal specialist can complete the root canal.[5]

Plaintiff points to no evidence that Dr. Calderon chose to have CDCR dentists attempt the

root canal because of cost concerns. More importantly, Plaintiff points to no evidence having

CDCR dentists attempt the root canal constituted deliberate disregard for his serious medical

needs, and Plaintiff points to no evidence that having a general dentist, rather than an endodontist,

perform the root canal treatment was medically unacceptable. Dr. Razavi's conclusion that

treatment of Plaintiff's tooth 23 is "beyond the reach of a general dentist," as set forth in his

March 15, 2016 dental notes, reaches that conclusion based on the severe calcification of the canal

in tooth 23, which was unknown to both Dr. Calderon and Dr. Razavi until after they had

---

[5] In support of his allegation that CDCR dentists are deliberately denying him necessary treatment,
he points to the following circumstantial evidence. Id. at 8. In June 2015, Plaintiff suffered an
injury to the jaw which knocked out his bridge, which was re-cemented into place. Uy Decl. ¶¶
14–15. Plaintiff was diagnosed with a potential bone fracture between teeth numbers 23 and 26
due to the injury. Id. Plaintiff consented to Dr. Nares' recommendation that he be referred for an
oral surgeon consultation for his fracture. Docket No. 73 at 9. Plaintiff alleges that instead of
being seen for a consultation for his jaw fracture, Plaintiff was seen by Dr. McQuirter, who
Plaintiff alleges identified himself as a "Sun-Shine Dentist" whose specialty was pulling teeth, and
who told Plaintiff that the only treatment that he would provide was the extraction of teeth 23 and
26. Id. Plaintiff alleges that extracting teeth in an area of recent fracture could have seriously
injured him, and that Defendants proposed this course of treatment clearly shows malice and
forethought and a reckless disregard for his health. Id. at 10. This circumstantial evidence cannot
serve as evidence of Dr. Calderon's "sufficiently culpable state of mind" because these events
happened in 2015, after Dr. Calderon's alleged constitutional violation,s and after Dr. Calderon
ceased working at CTF.

1    attempted to perform the root canal.  Although at the summary judgment stage, a court must make

2    all reasonable inferences in favor of the non-moving party, <u>Anderson</u>, 477 U.S. at 255 (at

3    summary judgment, all reasonable inferences from evidence are to be drawn in favor of non-

4    moving party), here Plaintiff has provided nothing other than his own assertions, which are

5    insufficient to create a genuine dispute as to whether having CDCR dentists attempt the root canal

6    was either medically unacceptable or done with deliberate disregard for Plaintiff's serious medical

7    needs.

8          **F.**      **Preliminary Injunction Motion**

9          Plaintiff has filed a second amended motion for preliminary injunction (Docket No. 48),

10   seeking an order mandating Defendants refer Plaintiff to "a contracted Oral Surgeon or to an

11   outside dental facility to drain and remove his oral abscess as soon as possible."  Docket No. 48 at

12   14.  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the

13   merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

14   balance of equities tips in his favor, and that an injunction is in the public interest."  <u>Winter v.</u>

15   <u>Natural Resources Defense Council, Inc.</u>, 555 U.S. 7, 20 (2008).  Should a moving party fail to

16   demonstrate any chance of success on the merits, a court may disregard the determination of

17   potential injury or a balancing of hardships and deny the injunction.  <u>Arcamuzi v. Continental Air</u>

18   <u>Lines, Inc.</u>, 819 F.2d 935, 937 (9th Cir. 1987); <u>Sports Form, Inc. v. United Press International,</u>

19   <u>Inc.</u>, 686 F.2d 750, 753 (9th Cir. 1982).  As detailed above, Plaintiff fails to demonstrate any

20   chance of success on the merits of his underlying action.  The Court therefore DENIES Plaintiff's

21   preliminary injunction motion.

22         **G.**      **Motion to Suppress Transcript of February 22, 2016 Deposition**

23         Plaintiff has filed a motion to suppress the transcript of his February 22, 2016 deposition,

24   and also requests that the Court impose the appropriate monetary and other sanctions on

25   Defendants to prevent future transgressions.  Docket No. 69.  In the motion, filed on May 16,

26   2016, Plaintiff alleges that Defendants and the court reporter deliberately refused to make the

27   deposition transcript available to Plaintiff, in violation of the Civil Discovery Act and Federal

28   Rules of Civil Procedure.  Docket No. 69 at 4–5.

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2       Plaintiff's motion to suppress the unapproved deposition transcript is DENIED AS MOOT.

3   As of May 24, 2016, Plaintiff had received and reviewed the deposition transcript and made only

    four minor changes.  Docket No. 72-1 at 4.

4       Plaintiff's request for sanctions is also DENIED.  The record indicates that the failure to

5   provide Plaintiff with the deposition transcript was unintentional.  See Docket No. 72-1 at 2.  In

6   addition, the record indicates that Plaintiff was not prejudiced by the delayed receipt of the

7   deposition because he had access to the full deposition transcript while preparing his opposition to

8   Dr. Calderon's summary judgment motion.[6]  Dr. Calderon's summary judgment motion was filed

9   on May 4, 2016, and referenced the deposition transcript.  Plaintiff received the deposition

10  transcript by May 24, 2016.  Docket No. 72-1 at 4.  On May 27, 2016, Plaintiff was granted an

11  extension of time to June 17, 2016, to file his opposition to Dr. Calderon's summary judgment

12  motion.  Sanctions are not warranted under these circumstances.

13                                      **CONCLUSION**

14      For the foregoing reasons, the Court GRANTS the summary judgment motion filed by Drs.

15  Marlais and Uy, Docket No. 51; GRANTS the summary judgment motion filed by Dr. Calderon,

16  Docket No. 68; DENIES Plaintiff's second amended preliminary injunction motion, Docket No.

17  48; and DENIES Plaintiff's request to suppress the February 22, 2016 deposition transcript,

18  Docket No. 69.

19      The Clerk shall enter judgment for Defendants and close the file.

20      This order terminates Docket Nos. 48, 51, 68, and 69.

21      **IT IS SO ORDERED.**

22  Dated:  September 28, 2016

23                                      _____
                                                JON S. TIGAR
24                                         United States District Judge

25

26

27  ──────────────
    [6] Plaintiff's deposition was taken on February 22, 2016, after Drs. Uy and Marlais filed their
28  summary judgment motion on January 14, 2016.  Plaintiff did not require a copy of the deposition
    transcript to file an opposition to the summary judgment motion filed by Drs. Uy and Marlais.